Peck, J.,
delivered the opinion of the court:
William B. Murphy, late first lieutenant 29th regiment of Pennsylvania volunteers, captain and commissary of subsistence, and brevet major United States volunteers, represents by his petition that during *215 and before the months of January, February, March, April, and May, 3 862, he held the rank of first lieutenant in the regiment aforesaid, and was detailed by order of Major General Banks, commanding forces upon the upper Potomac, placed upon duty as acting commissary of subsistence, and temporarily stationed at Camp Muddy Branch, near Darnestown, Maryland, in charge of United States beef cattle; that while thus in charge he collected for the United States various sums of money, realized from the sale of hides, tallow, &c., and of commissary stores to officers, which sums of money were properly disbursed and accounted for, except the sum of $4,006 04. This sum, he alleges, was disbursed during the months aforesaid in payment for the herding, forage, and other necessary and requisite expenses attending the keeping of a large number of beef cattle under his charge for the then present use of the army encamped in the vicinity aforesaid — that is to say : $768 38 in the month of January, $1,039 10 in the month of February, $1,512 80 in the month of March, and from April 1 to May 23, 1862, the sum of $654 77, leaving a balance in his hands, unexpended, amounting to $30 99. That the regular monthly statements required of petitioner of his receipts and disbursements for the months of January, February, and March,-, aforesaid, are on file in the Treasury Department. That the command with which petitioner was connected took the field in active campaign on or about the 24th of February, 1862, and owing to their being kept constantly upon the move his quarterly account or report of his disbursements for the first quarter of the year 1862 was delayed. That afterwards, when the same had been prepared, upon the 24th of May, 1862, the wagon in which all the papers connected with the duties of this petitioner and the report aforesaid were being conveyed was captured by a cavalry force of the enemy, carried away, and lost to him. That on the said 23d of May,-, it was found by petitioner, on settlement of his cash book, that of the said sum of $4,006 04 there remained in his hands but the sum of $30 99 for which he was accountable, and that this money, with about $310 of his own, was placed with such other effects aS he had in the wagon as aforesaid, and that all, public and private property, was captured, carried away, and lost to him. That he cannot obtain proper credit at the Treasury Department, for want of vouchers for his disbursements aforesaid, of the sum of $3,975 05, nor of the money undisbursed, $30 99, which he insists were lost without fault or neglect on his part; and he prays a decree to aid him in the premises.
*216 The claimant and bis clerk are tbe only witnesses examined in support of tbe prayer of tbe petition.
Joseph E. Sailer, who acted as clerk for Murphy before and at tbe time of tbe receipt and disbursement of tbe money to be accounted for, makes bis statements with great particularity. He says :
“ I enlisted on tbe 8th day of June, 1861, in company G, 29th regiment Pennsylvania volunteers,' and was mustered in on the 29th day of June, 1861. William R. Murphy was mustered into tbe regiment on tbe 10th day of September of tbe same year as first lieutenant of company F. A detail came two or three days before tbe battle of Ball’s Bluff, in tbe month of October, by order of Major General N. P. Banks — that is to say: Colonel Murphy, commanding tbe 29th regiment Pennsylvania volunteers, was ordered by General Banks to detail an officer and an enlisted man to take charge of beef cattle in tbe commissary, or rather subsistence, department, and Lieutenant Murphy and I were so detailed. He was assigned to duty to a place called Muddy Branch, near Darnestown. We moved from there to Frederick City, on December 2, 1861, and we left Frederick on 22d February, 1862. I was Captain Murphy’s (tbe claimant’s) clerk. My duties were to make out all tbe necessary papers, pay rolls, &c., and transmit abstracts and returns to the department. I rendered an account for the quarter ending December, 186 L, showing a balance due tbe government of $804 65. Up to that time and for two or three months afterwards all tbe money received by tbe claimant was produced from tbe sale of bides, tallow, and offal. This was tbe case up to May 25, 1862.
“All tbe money received for bides and tallow was paid to me, and all moneys disbursed passed through my bands. I always drew up the receipts. The sale of hides and tallow was in pursuance of a contract made.with tbe purchaser by Oaptain E. G. Beckwith, chief commissary of tbe division.
“ My returns were kept in such condition that if I had one day’s work I could have made niy returns to the department. I bad them all ready to be mailed a few days before the retreat down tbe valley, together with my monthly statement for April. I put them in my desk in tbe wagon and put my desk in tbe wagon on tbe morning of' the 24th of May, 1862. I made the last settlement of my cash accounts about 9 o’clock on tbe evening -of May 23, which showed a balance of $30 99 in our bands. I omitted to mention that the only-sale of hides in April or May was qf one hundred dollars.
*217 “ We started on the march about half-past eight, and at about one o’clock the rebel cavalry cut the train in two and seized our wagons-between Middletown and Newtown. I was present at the capture and saw it myself; I was alongside of the wagon. .This wagon had our-mess, desk and Captain Murphy’s trunk, containing $341; I saw-Captain Murphy place this money in the trunk; he remarked ‘it would be safer there than on his person.’ We had the night previous counted how much money belonged to the government, and found it to be $60 99. This amount was a part of the money placed in Captain Murphy’s trunk; the balance was his private property.”
The claimant testifies that the disbursements made by Sailer, his clerk, in January, February, March, April, and May, were “ for herding and for forage, and for the payment of employés. The forage was. for United States beef cattle, and consisted of hay, corn, and fodder.
“ I obtained for these disbursements proper vouchers. The vouchers obtained for these, disbursements were in the captured desk referred to by Mr. Sailer. They were in the usual form in which vouchers of that character were made out, and such as had been previously and were subsequently allowed by the department.
“ Both sets of vouchers (that is, in duplicate) were in the desk. I last saw those vouchers on the night of May 23, 1862. I was helping to pack them up. I assisted in placing them-in the desk, and never saw them afterwards.”
We think these facts, as detailed, relieve the claimant from the imputation of fault or neglect. The transportation train was the only means furnished by which he could remove his desk; and that he thought this- a safe place of deposit for the vouchers and government funds is best manifested by his placing his individual funds in the-same keeping. Unless he intended to desert his post the train was as. safe as his person, and if both should be captured the danger of loss was equal in both cases.
The deputy solicitor insists that the omission to make monthly reports would imply such neglect on the part of Murphy as would prevent a decree in his favor. Sailer^ his clerk, states that he was constantly occupied, being every day in the saddle, and that he had not leisure to make them. The reports would not have exonerated Murphy. It was the quarterly return of the vouchers that was required. It would seem that the nature of the occupation of Murphy- and his clerk, which was without intermission, should excuse the-remissness in omitting the reports. The' danger of loss by capture *218 was not so imminent as to stimulate great activity, and much can be blamed now that circumstances then existing would have palliated.
Wo think he is entitled to a decree authorizing a credit for. the captured vouchers and money to the extent of $4,003 60, and it is so •ordered.